# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# EVANSVILLE DIVISION

| | |
|---|---|
| J.A.W., | ) |
| Plaintiff, | ) |
| vs. | ) Cause No. 3:18-cv-37-WTL-MPB |
| EVANSVILLE VANDERBURGH SCHOOL CORPORATION, | ) |
| Defendant. | ) |

## ENTRY ON PENDING MOTIONS

This cause is before the Court on the Defendant's second motion to dismiss (Dkt. No. 83); the Plaintiff's motion for partial summary judgment (Dkt. No. 87); and the Defendant's cross motion for summary judgment (Dkt. No. 95). The motions are fully briefed, and the Court, being duly advised, **GRANTS** the Plaintiff's motion and **DENIES** the Defendant's motions for the reasons set forth below.

## I. BACKGROUND[1]

Plaintiff J.A.W. is now eighteen years old. At the time the Complaint was filed, he was sixteen and an unemancipated minor; his mother was his sole legal and physical guardian.

J.A.W. was assigned the gender of female at birth. His birth certificate, which was obtained in Florida where he was born, identifies his sex as female, as does his Indiana driver's license. However, J.A.W. has long identified as male. When J.A.W. was eleven years old, he first encountered the term transgender and recognized that he was transgender.

---

[1] Much of the Background section is taken from the Court's Entry on Motion for Preliminary Injunction (Dkt. No. 68).

J.A.W. began to feel uncomfortable using the girls' restrooms at school in sixth grade. In eighth grade he was assigned to a physical education class and felt uncomfortable using female locker rooms to change before and after class. He and his mother spoke to a social worker at school, and his schedule was changed so that he was no longer in a physical education class.

Beginning in eighth grade, J.A.W. began to present himself outwardly as a boy; he began sporting a male haircut and wearing masculine clothing. He also began to ask his teachers to address him by his chosen masculine name (J.A.W.) instead of the feminine name that had been given to him at birth and to request that masculine pronouns be used to refer to him. J.A.W. was too intimidated at that time to seek permission to use the boys' restrooms at school.

During his freshman year, J.A.W. attended classes at both North High School and Central High School. As he entered puberty, he suffered increasing discomfort and distress relating to what he now knows to be gender dysphoria, which is defined in the Diagnostic and Statistical Manual of Mental Disorders ("DSM-V") as "[a] marked incongruence between one's experienced/expressed gender and assigned gender." Dkt. No. 50-6 at 4. At that point, he became extremely uncomfortable using the female restrooms at school.

J.A.W. was required to take physical education at North High School during his freshman year. Because he did not feel comfortable using the girls' locker room to change before and after gym class, he and another transgender student began using a boys' restroom for that purpose. They did not seek permission to do so, and Evansville Vanderburgh School Corporation ("EVSC") administrators learned of the situation when a parent called to complain that there were "two girls" using the boys' restroom. EVSC told J.A.W. not to use the boys' restroom anymore; as an alternative, the two transgender students were told to use another girls' locker room that was not otherwise being used. For other restroom needs, EVSC told J.A.W. that he

2

could use the girls' restrooms or a gender-neutral, single-occupancy restroom in the nurse's office at North High School. This restroom generally is not used by students unless they are visiting the nurse or the office or have been granted permission to use it on a regular basis after demonstrating that they have a reason to do so. The nurse's restroom was located far from J.A.W.'s classes and therefore was inconvenient. J.A.W. tried using it a few times but found it locked, so he stopped trying to use it. J.A.W. did not make any specific request with regard to restroom use at Central High School.

During his sophomore year, J.A.W. attended classes at both North High School and Harrison High School. Per his request, his teachers continued to address him as J.A.W. and use masculine pronouns to refer to him. Early in that school year, J.A.W. approached the principal of North High School with the "Dear Colleague" letter that was jointly issued on May 13, 2016, by the U.S. Department of Justice, Civil Rights Division, and the U.S. Department of Education, Office for Civil Rights, which J.A.W. believed entitled him to use the boys' restrooms at school.[2] EVSC reviewed the letter, consulted with counsel, and ultimately denied J.A.W.'s request to use the boys' restrooms. J.A.W. was instructed either to use the girls' restrooms or the gender-neutral, single-occupancy restroom in the nurse's office at North High School. J.A.W. was not informed of the availability of a gender-neutral restroom at Harrison High School; students are also required to obtain permission to use that restroom. The arrangements for J.A.W. to change before and after physical education class remained the same as the previous year.

---

[2]The "Dear Colleague" letter was rescinded by the Department of Justice and the Department of Education on February 22, 2017. J.A.W. does not assert it as a basis of his claim.

J.A.W. began counseling in September 2016 because he wanted confirmation that he had gender dysphoria.³ In June 2017, J.A.W.'s counselor wrote to his medical doctor and opined that J.A.W. met the criteria for Gender Dysphoria of Adolescence and that he would benefit greatly both medically and psychologically from hormone therapy. Based upon a diagnosis of gender dysphoria, J.A.W. was prescribed testosterone in the fall of 2017. He has been taking testosterone injections regularly since then.

In November 2016, during his sophomore year, J.A.W. sent an email to Dr. Dionne Blue, EVSC's Chief Diversity Officer, informing Dr. Blue that he was a transgender student and asking about EVSC's policy with regard to transgender students accessing restrooms and locker rooms. Dr. Blue responded that EVSC did not have an official policy, but that transgender students could use the nurse's office or other gender-neutral restrooms depending on the facilities available in the building. Dr. Blue further stated that schools would address any other needs on a case-by-case basis. J.A.W. did not follow up with Dr. Blue or make any requests of her. During his sophomore year, J.A.W. did not complain to anyone at EVSC that the gender-neutral restrooms made available to him were inaccessible or otherwise unsatisfactory.

J.A.W. did not seek permission to use the boys' restrooms during the first semester of his junior year. On January 21, 2018, early in the second semester, J.A.W.'s attorney contacted

---

³J.A.W. has submitted the Declaration of James D. Fortenberry, M.D., M.S., the director and founder of the Gender Health Program at Riley Children's Health in Indianapolis, who explains that the standards of care for gender dysphoria "recognize . . . that the principal treatment of gender dysphoria is to allow the person full expression of his or her gender identity." Dkt. 50-6 at 6. This involves both "social role transition," a process in which "a person presents themselves in a manner consistent with their experienced gender, which includes name, dress, hair style, and other aspects of gender presentation," as well as hormone therapy to "initiate[] the physiologic changes in body contour and appearance to match the experienced gender." *Id.* at 7. The ability to use public restrooms consistent with one's gender identity "is a prime component of gender affirmation." *Id.*

4

EVSC on his behalf and informed EVSC that pursuant to the Seventh Circuit's decision in *Whitaker By Whitaker v. Kenosha Unified School District No. 1 Board of Educucation*, 858 F.3d 1034, 1044 (7th Cir. 2017), *cert. dismissed sub nom. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ. v. Whitaker ex rel. Whitaker*, 138 S. Ct. 1260 (2018), he believed that J.A.W. was entitled to use the boys' restrooms at school. The letter did not mention J.A.W.'s mother's position on the issue. EVSC's general counsel responded that *Whitaker* was distinguishable on its facts, that it did not appear to represent the state of the law across the United States, and that J.A.W. would not be permitted to use the boys' restrooms at school. This lawsuit ensued.

Prior to the institution of these proceedings, EVSC had never been made aware that J.A.W. had been diagnosed with gender dysphoria, that he was undergoing hormone therapy, or that he had any complaints regarding the proximity and accessibility of the gender-neutral restroom EVSC had made available to him. However, EVSC became aware through discovery that J.A.W. had been diagnosed with gender dysphoria and had been undergoing hormone therapy. After beginning hormone therapy, his appearance and voice became more masculine, he developed a patchy beard, he lost weight, and his abdomen developed more of a male appearance. He no longer menstruates. At the preliminary injunction hearing, he looked and sounded like a teenaged boy; he is very unlikely to be mistaken for a girl at this point.

To avoid having to use restrooms at school, J.A.W. severely restricted his fluid intake in an attempt to prevent himself from having to go the bathroom while at school. This caused him pain and discomfort. On the few occasions in the past that J.A.W. could not wait, he used the girls' restrooms at school, as he did not want to be disciplined by EVSC.[4] Using the girls'

---

[4] EVSC's superintendent, Dr. David Smith, testified at the preliminary injunction hearing that if J.A.W. had used a boys' restroom at school, he would have been subject to discipline for "defiance." Dkt. No. 61 at 37.

restrooms was extremely upsetting to him and made him feel ostracized from his peers because, as he testified, it "contradicts what I am projecting to the world of what I identify as." Dkt. No. 61 at 18-19. J.A.W. also testified that using the girls' restroom at school drew attention to the fact that he is transgender, and that female peers at school expressed discomfort with him using the girls' restrooms because he appeared male. *Id.* at 21.

EVSC had no written policy regarding transgender students' use of restrooms. Dr. David Smith, EVSC's superintendent, testified at the preliminary injunction hearing that EVSC did not have a formal policy at all; it had a "practice." Dkt. No. 61 at 38. He further testified that EVSC's position was that J.A.W. could not use boys' restrooms because "biologically he is female." *Id.* at 39. However, he also testified that if J.A.W. had legally had his birth certificate changed so that it indicated his sex was male, then under EVSC's practice, J.A.W. would have been permitted to use the boys' restrooms at school, because a birth certificate would have been an "objective standard" by which to determine that it was appropriate for him to do so. He also testified that if J.A.W. were to have his birth certificate changed but his use of the boys' restrooms nonetheless caused a "disruption," EVSC could respond by again barring J.A.W. from the boys' restrooms. *Id.* at 54.

In August 2018, the Court entered a preliminary injunction allowing J.A.W. to use the male restrooms within EVSC, and EVSC complied with the Court's order. J.A.W. graduated from North High School in the Evansville Vanderburgh School Corporation ("EVSC") in December 2018.

## II. MOTIONS FOR SUMMARY JUDGMENT

J.A.W. asserts two claims: (1) that EVSC's refusal to permit him to use boys' restrooms violated Title IX, 20 U.S.C. § 1681(a); and (2) that EVSC's refusal to permit him to use boys' restrooms violated his rights under the equal protection clause of the Fourteenth Amendment. EVSC has moved for summary judgment on both claims. J.A.W. has filed a motion for partial summary judgment on the issue of liability as to both claims.

### A. Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed, and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). When the Court reviews cross-motions for summary judgment, as is the case here, "we construe all inferences in favor of the party against whom the motion under consideration is made." *Speciale v. Blue Cross & Blue Shield Ass'n*, 538 F.3d 615, 621 (7th Cir. 2008) (quotation omitted). "[W]e look to the burden of proof that each party would bear on an issue of trial." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997). However, a party who bears the burden of proof on a particular issue may not rest on its pleadings, but must show what evidence it has that there is a genuine issue of material fact that requires trial. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record,

and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## B. Title IX Claim

J.A.W. asserts in this case that EVSC's refusal to permit him to use boys' restrooms violated Title IX, 20 U.S.C. § 1681(a), which prohibits a covered institution[5] from discriminating on the basis of sex. Title IX of the Education Amendments of 1972 provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Consistent with Title IX, an education program or activity receiving federal financial assistance "may provide separate toilet, locker room, and shower facilities on the basis of sex, but such facilities provided for students of one sex shall be comparable to such facilities provided for students of the other sex." 34 C.F.R. § 106.33. Although the only enforcement mechanism explicitly provided for in Title IX is administrative, *see* 20 U.S.C. § 1682, the Supreme Court has "recognized an implied private right of action under Title IX," and has "held that money damages are available in such suits," *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 639 (1999). Nevertheless, "private damages actions are available only where recipients of federal funding had adequate notice that they could be liable for the conduct at issue." *Id.* at 640.

Much of EVSC's argument is focused on the purported lack of notice provided by J.A.W. Specifically, EVSC argues, in relevant part:

> [P]rior to engaging in discovery in this case, EVSC was presented with nothing more than Plaintiff's announcement that he is male. Indeed, as this court found in its Entry on Motion for Preliminary Injunction, "[p]rior to the institution of these

---

[5]There is no dispute that EVSC is a covered institution under Title IX because it receives federal funds.

8

> proceedings, EVSC had never been made aware that J.A.W. had been diagnosed with gender dysphoria, that he was undergoing hormone therapy, or that he had any complaints regarding the proximity and accessibility of the gender-neutral restroom EVSC had made available to him." Dkt. No. 68 at 5 (emphasis supplied). As for the wishes of Plaintiff's mother, EVSC had heard nothing at all from Plaintiff's mother on the subject of his restroom access until shortly before the hearing on Plaintiff's Motion for Preliminary Injunction, when Plaintiff submitted a declaration in which Plaintiff's mother states that she is supportive of Plaintiff's efforts to gain access to the boys' restrooms. Dkt. No. 50-4 at ¶¶ 1-3.
>
> Clearly, the Seventh Circuit has recognized that some threshold showing is required to trigger protections for transgender students, and a mere "announcement" of one's transgender status is practically and legally insufficient. Thus, in this case, Plaintiff's right to use boys' restrooms—assuming such a right exists—could not have accrued until EVSC received something more than Plaintiff's announcement that he is a boy and his unilateral demand for access to the boys' restrooms. EVSC did not receive that "something more" until the summer following Plaintiff's junior year, and by the time school started again in the fall, the preliminary injunction was in place. It is undisputed that EVSC complied with the preliminary injunction. Dkt. No. 87-1. Consequently, Plaintiff's rights were never violated.

Dkt. No. 96 at 10-11. Because EVSC did not receive something more than J.A.W.'s "announcement that he is a boy and his unilateral demand for access to the boys' restrooms . . . until the summer following [J.A.W.'s] junior year," EVSC argues, J.A.W.'s rights could not have accrued—and no damages could have resulted—until that time.

Even taking the facts as set forth by EVSC, summary judgment in favor of J.A.W. and against EVSC is appropriate. The testimony of Dr. Smith made clear that the only circumstance under which EVSC would have allowed J.A.W. to use the boys' bathroom was if J.A.W. presented EVSC with a male birth certificate. Even then, Dr. Smith acknowledged, J.A.W. could be barred from the boys' restrooms if his use created a disruption.[6]

---

[6]In relevant part, Dr. Smith testified as follows:

Q: So when you're telling us that you have a practice that's never been used before of allowing transgender students who get a change in their birth certificate to use the bathroom of

9

As the Seventh Circuit has explained, "A policy that requires an individual to use a bathroom that does not conform with his or her gender identify punishes that individual for his or her gender non-conformance, which in turn violates Title IX. . . . Providing a gender-neutral alternative is not sufficient to relieve the School District from liability, as it is the policy itself which violates the Act." *Whitaker*, 858 F.3d at 1049-50. EVSC has failed to point to any facts by which a reasonable factfinder could determine that it had any policy other than one requiring transgender students to use a bathroom that did not conform with their gender identify.[7]

In sum, EVSC's practice violated Title IX. The violation occurred regardless of whether EVSC knew that J.A.W. or any other student was affected by its policy. As such, the only question remaining is whether J.A.W. is entitled to damages on his Title IX claim.

EVSC argues that J.A.W's claim for damages also fails because EVSC did not have adequate notice that its conduct could subject it to liability as required for a plaintiff to claim damages under Title IX, which was enacted pursuant to Congress' powers under the Spending Clause. "[B]ecause Title IX was enacted as an exercise of Congress' powers under the Spending Clause, private damages actions are available only where recipients of federal funding had adequate notice that they could be liable for the conduct at issue." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 181 (2005) (quotations and citations omitted). "When Congress enacts legislation under its spending power, that legislation is 'in the nature of a contract: in return for

---

their gender identity, that could still result in them not being able to use that bathroom if there's a disruption?
    A: For -- if there's a disruption, yes.

Dkt. No. 61 at 54.

[7]The fact that EVSC had a practice, rather than a written policy, is not relevant. Title IX protects against discriminatory practices, not just policies. *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 704 (1979).

10

federal funds, the States agree to comply with federally imposed conditions.'" *Id.* at 182 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). As the Supreme Court has recognized, "[t]here can . . . be no knowing acceptance [of the terms of the contract] if a State is unaware of the conditions [imposed by the legislation on its receipt of funds]." *Pennhurst State Sch. & Hosp.*, 451 U.S. at 17.

As EVSC points out, Title IX's implementing regulations permit schools to provide separate toilets, locker rooms, and shower facilities on the basis of sex. Courts have not uniformly agreed that sex encompasses gender identity. As such, EVSC argues, Congress cannot have been said to clearly require Title IX funding recipients to permit transgender students access to the restroom facilities aligning with their gender identities, and EVSC did not have adequate notice.

This argument is unavailing. Title IX funding recipients "have been on notice that they could be subjected to private suits for intentional sex discrimination under Title IX since 1979," when the Supreme Court decided *Cannon v. University of Chicago*, 441 U.S. 677, 691 (1979), and "have been put on notice by the fact that . . . cases since *Cannon* . . . have consistently interpreted Title IX's private cause of action broadly to encompass diverse forms of intentional sex discrimination." *Jackson*, 544 U.S. at 182. The Seventh Circuit "has looked to Title VII when construing Title IX," *Whitaker*, 858 F.3d at 1047, and in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), a plurality of the Supreme Court "embraced a broad view of Title VII, as Congress 'intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes.'" *Whitaker*, 858 F.3d at 1047 (quoting *Price Waterhouse*, 490 U.S. at 251). The Seventh Circuit held in 2017 that a homosexual plaintiff can state a Title VII claim of sex discrimination based upon a theory of sex-stereotyping. *Hively v. Ivy Tech Cmty.*

11

*Coll. of Ind.*, 853 F.3d 339, 351-52 (7th Cir. 2017). And, of course, in *Whitaker*, 858 F.3d 1049-50, the Seventh Circuit made clear that sex-stereotyping claims also may be brought by transgender students under Title IX. The mandate issued in *Whitaker* on June 21, 2017, and the decision thus became binding on that date.[8] EVSC thus should have known that it was required to conform its practices to Seventh Circuit law as of that date. Accordingly, J.A.W.'s motion for partial summary judgment is granted, and EVSC's motion for summary judgment is denied as to the Title IX claim.

While EVSC's practice violated Title IX, the question of whether J.A.W. is entitled to damages and when those damages began to accrue is a factual question that a jury must decide. *See Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1370 (7th Cir. 1995).

### C. Fourteenth Amendment Equal Protection Claim

J.A.W. also argues that EVSC's refusal to permit him to use boys' restrooms violated his rights under the equal protection clause of the Fourteenth Amendment.

As J.A.W. correctly points out, EVSC does not offer any argument with regard to this claim beyond the notice argument discussed above. That argument fails for the same reasons, as the court's ruling in *Whitaker* also put EVSC on notice that its practice was a "form of sex discrimination," *Whitaker*, 858 F.3d at 1051, that implicated the equal protection clause.

Despite EVSC's failure to articulate any additional arguments, the Court may not grant summary judgment solely on that failure. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (Rather, "a nonmovant's failure to respond to a summary judgment motion . . .

---

[8]While EVSC notes that *certiorari* was pending in *Whitaker* until March 5, 2018, that is irrelevant, as no stay of the Seventh Circuit's mandate was issued.

does not, of course, automatically result in judgment for the movant. [The moving party] must still demonstrate that [he] is entitled to judgment as a matter of law.") (citations omitted).

The Fourteenth Amendment provides, in part, that no State may "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. In discussing the plaintiff's claims in *Whitaker*, the Seventh Circuit stated the following:

> The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all persons similarly situated should be treated alike. It therefore, protects against intentional and arbitrary discrimination. Generally, state action is presumed to be lawful and will be upheld if the classification drawn by the statute is rationally related to a legitimate state interest.
>
> The rational basis test, however, does not apply when a classification is based upon sex. Rather, a sex-based classification is subject to heightened scrutiny, as sex frequently bears no relation to the ability to perform or contribute to society. When a sex-based classification is used, the burden rests with the state to demonstrate that its proffered justification is exceedingly persuasive. This requires the state to show that the classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives. It is not sufficient to provide a hypothesized or *post hoc* justification created in response to litigation. Nor may the justification be based upon overbroad generalizations about sex. Instead, the justification must be genuine.

*Whitaker*, 858 F.3d at 1050 (citations and internal quotation marks omitted). The court then found that "the School District's policy cannot be stated without referencing sex, as the School District decides which bathroom a student may use based upon the sex listed on the student's birth certificate" and thus the "policy is inherently based upon a sex-classification and heightened review applies." *Id.* at 1051. Finally, the court held that the school district had not met its burden of demonstrating that its justification for its restroom policy was "not only genuine, but also exceedingly persuasive." *Id.* at 1051-52 (citation and internal quotation marks omitted).

J.A.W. has pointed to evidence that stands unrefuted that EVSC's practice could not be stated without referencing sex and that the practice treated transgender students like J.A.W. differently. As such, the burden shifts to EVSC to demonstrate that its justification for the its practice was not only genuine but exceedingly persuasive. *See id.* EVSC has put forth no justification for its practice in its summary judgment briefing. Accordingly, J.A.W.'s motion for partial summary judgment is granted, and EVSC's motion for summary judgment is denied as to the Fourteenth Amendment equal protection claim.

As with the Title IX claim, the question of whether J.A.W. is entitled to damages on his equal protection claim and when those damages began to accrue is a factual question that a jury must decide. *See Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1370 (7th Cir. 1995).

### III. MOTION TO DISMISS

EVSC also has filed a Second Motion to Dismiss (Dkt. No. 83), arguing that J.A.W.'s claims against EVSC were rendered moot by his graduation from high school. As the Court found above, J.A.W. is entitled to seek damages for the violation of his statutory and constitutional rights. Accordingly, his claims are not moot, and EVSC's Second Motion to Dismiss (Dkt. No. 83) is **DENIED.**

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Plaintiff's motion for partial summary judgment (Dkt. No. 87) and **DENIES** the Defendant's cross-motion for summary judgment (Dkt. No. 95). The Plaintiff's motion to file a surreply (Dkt. No. 92) is **DENIED AS MOOT**. Finally, the Defendant's Second Motion to Dismiss (Dkt. No. 83) is **DENIED**.

Within 14 days of the date of this Entry, the parties shall file a joint notice informing the Court whether they still believe that a three-day jury trial in October 2019 is appropriate.

SO ORDERED: 6/7/2019

Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana


Copies to all counsel of record via electronic notification